IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEAM ENTERPRISES, INC., | CASE NO. CV F 08-0872 LJO SMS |
| Plaintiff, | **ORDER ON LEGACY VULCAN CORP.'S MOTIONS TO DISMISS AND TO STRIKE** (Doc. 77.) |
| vs. | |
| WESTERN INVESTMENT REAL ESTATE TRUST, et al., | |
| Defendants. / | |
| AND RELATED CROSS-ACTIONS. _____/ | |

## INTRODUCTION

In this environmental cost recovery action, defendants Vulcan Materials Company and Legacy Vulcan Corp. (collectively "Vulcan") seek to dismiss plaintiff Team Enterprises, Inc.'s ("Team's") California statutory contribution claim and to strike Team's statutory attorney fees claim. Team responds that it has pled "valid claims" under the statutes at issue. This Court considered Vulcan's F.R.Civ.P.12(b)(6) motion to dismiss and F.R.Civ.P. 12(f) motion to strike on the record and VACATES the January 7, 2009 hearing. For the reasons discussed below, this Court DISMISSES without prejudice Team's statutory contribution claim and strikes Team's statutory attorney fees claim.

# BACKGROUND

Vulcan is a former bulk chemical manufacturer and is headquartered in Alabama. Vulcan manufactured perchloroethylene ("PCE"), a chlorinated solvent which is commonly used in dry cleaning.

Since March 1980, Team has operated an One Hour Martinizing dry cleaner at a Modesto shopping center ("property") as a leasee. During 1980 to 2004, PCE, a hazardous substance defined by California, was used at the property. In June 2004, Team discovered the property's contamination, settled with the City of Modesto to investigate and clean up contamination, and agreed to pay the oversight of remedial work of the Regional Water Quality Control Board, Central Valley Region ("RWQCB"), the California agency which supervises remediation of groundwater contamination.

In this recently consolidated action, Team proceeds on its first amended complaint ("FAC") to allege federal and California groundwater contamination claims arising from PCE use against numerous property owners and leasees and against Vulcan and another PCE manufacturer. The FAC alleges that property owner/leasee defendants released "hazardous substances onto the Property, and surrounding properties, soils, and groundwater" and that the RWQCB "has indicated that the property requires clean up." The FAC further alleges that TEAM has incurred costs "due to contamination at the Property." The FAC faults Vulcan, as a PCE manufacturer, for its production, transfer and direction "in such a manner that the leakage of PCE necessarily and immediately resulted."

# VULCAN'S MOTION TO DISMISS

The FAC alleges ten causes of action against all defendants, including Vulcan, and at this stage, Vulcan seeks F.R.Civ.P. 12(b)(6) dismissal of the (twelfth) Porter-Cologne Statutory Contribution cause of action, which alleges:

> The Porter-Cologne Act provides for statutory contribution to those persons who become liable for the investigation, clean-up and remediation of hazardous substance contamination to groundwater. To the extent TEAM incurs costs and expenses in response to the alleged hazardous substance contamination of the soil and groundwater in and around the Property, TEAM is statutorily entitled to contribution pursuant to Water Code Section 13350(i)[1] and hereby requests contribution and indemnification pursuant to that section as against the Defendants.

/ / /

---

[1] California Water Code section 13350 will be referred to as "section 13350."

**F.R.Civ.P. 12(b)(6) Standards**

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). F.R.Civ.P. 12(b)(6) dismissal is proper when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

In resolving a F.R.Civ.P 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). With these standards in mind, this Court addresses the merits of the (twelfth) section 13350(i) contribution cause of action.

**Section 13350(i) Contribution**

Vulcan contends that the (tenth) section 13350(i) contribution cause of action fails in the absence

of administrative penalties assessed against Team "by a regional or state water board, the state Attorney General, or by a court due to violation of an agency order." Team responds that civil liabilities need not "have been actually paid before a party may bring a cause of action for contribution or indemnity."

Section 13350(b) provides that "[a]ny person who, without regard to intent or negligence, causes or permits any hazardous substance to be discharged in or on any of the waters of the state . . . shall be strictly liable civilly in accordance with subdivision (d) or (e)." Section 13350 delineates penalties which a court or state or regional water board my impose for hazardous substance discharge. Section 13350(i) establishes a right of contribution:

> (i) Any person who **incurs any liability established under this section shall be entitled to contribution for that liability** from any third party, in an action in the superior court and upon proof that the discharge was caused in whole or in part by an act or omission of the third party, to the extent that the discharge is caused by the act or omission of the third party, in accordance with the principles of comparative fault. (Bold added.)

Section 13350(a) imposes liability when a person:

1. "[V]iolates any cease and desist order or cleanup and abatement order hereafter issued, reissued, or amended by a regional board or the state board";
2. "[I]n violation of any waste discharge requirement, waiver condition, certification, or other order or prohibition issued, reissued, or amended by a regional board or the state board, discharges waste, or causes or permits waste to be deposited where it is discharged, into the waters of the state"; or
3. "[C]auses or permits any oil or any residuary product of petroleum to be deposited in or on any of the waters of the state, except in accordance with waste discharge requirements or other actions or provisions of this division . . ."

Vulcan notes the FAC's absence of allegations of section 13350(a) liability – violation of a cease and desist order, cleanup and abatement order, waste discharge requirement, other order or prohibition of a regional or state board or discharge of petroleum products. Vulcan points to the FAC's sparse allegations that the RWQCB "has indicated that the property needs clean up" and that the RWQCB has "ordered" Team "to investigate the property."

Vulcan further faults the FAC's failure to allege liability under section 13350(b)(1), which

4

imposes strict civil liability on "[a]ny person who, without regard to intent or negligence, causes or permits any hazardous substance to be discharged in or on any of the waters of the state."

Lastly, Vulcan criticizes the FAC's failure to allege imposition on Team of section 13350(d) and (e) penalties.[2] Vulcan concludes that the (twelfth) section 13350(i) contribution cause of action fails without allegations of section 13350 penalties against Team or that Team has been found civilly liable for causing or permitting discharge of hazardous substances in that contribution is available only to a party which "incurs any liability" under section 13350.

Team argues that simply being sued is sufficient to plead section 13350(i) contribution remedies. Team notes that it is subject to several defendants' negligence per se counterclaims "premised upon Team's alleged violation of the Water Code, including § 13350." Team contends that if defendants prevail on their counterclaims, "Team will have incurred liability under § 13350 and would be entitled to contribution under § 13350(i).

---

[2] Section 13350(d) and (e) provide:

(d) The court may impose civil liability either on a daily basis or on a per gallon basis, but not both.

   (1) The civil liability on a daily basis may not exceed fifteen thousand dollars ($15,000) for each day the violation occurs.

   (2) The civil liability on a per gallon basis may not exceed twenty dollars ($20) for each gallon of waste discharged.

(e) The state board or a regional board may impose civil liability administratively pursuant to Article 2.5 (commencing with Section 13323) of Chapter 5 either on a daily basis or on a per gallon basis, but not both.

   (1) The civil liability on a daily basis may not exceed five thousand dollars ($5,000) for each day the violation occurs.

      (A) When there is a discharge, and a cleanup and abatement order is issued, except as provided in subdivision (f), the civil liability shall not be less than five hundred dollars ($500) for each day in which the discharge occurs and for each day the cleanup and abatement order is violated.

      (B) When there is no discharge, but an order issued by the regional board is violated, except as provided in subdivision (f), the civil liability shall not be less than one hundred dollars ($100) for each day in which the violation occurs.

   (2) The civil liability on a per gallon basis may not exceed ten dollars ($10) for each gallon of waste discharged.

1    Vulcan notes that the counterclaims did not arise until after Team filed its FAC and thus cannot
2 support section 13350(i) contribution. Vulcan points out that the defendants who filed counterclaims
3 are not subject to section 13350(a) or (b) liability to give rise to section 13350(i) contribution.
4    Team's contentions are unsupported and unpersuasive. Section 13350(i) expressly limits its right
5 to contribution to "liability under this section." The FAC fails to allege liability under section 13350.
6 Although Team may incur Section 13350 liability, it has not yet. The FAC does not, and apparently
7 cannot, allege that a court or board has imposed liability for a section 13350 enumerated violation or
8 discharge. Until such section 13350 violation or discharge arises, Team lacks a ripe section 13350(i)
9 contribution claim to warrant dismissal without prejudice of its (twelfth) Porter-Cologne Statutory
10 Contribution cause of action.

## VULCAN'S MOTION TO STRIKE

Pursuant to F.R.Civ.P. 12(f), Vulcan seeks to strike paragraphs 84 and 85 of the FAC's (tenth) equitable indemnity cause of action whereby Team demands defense and indemnity from defendants in that Team "has been required to respond to the Regional Water Board," "has necessarily retained legal counsel," and "has incurred, and will continue to incur, liability for attorneys' fees and defenses costs." Vulcan further seeks to strike the words "and statute" from the FAC's prayer: "7. For attorneys' fees and costs by contract (lease) and statute."

### F.R.Civ.P. 12(f) Standards

F.R.Civ.P. 12(f) empowers a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Motions to strike may be granted if "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992); *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). "[T]he function of a [F.R.Civ.P.] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023 (1994). "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v.*

6

*Uvawas*, 922 F.Supp. 1450, 1479, n. 34 (C.D. Cal. 1996).

An "immaterial" matter has no essential or important relationship to the claim for relief or defenses pleaded. *Fantasy, Inc.,* 984 F.2d at 1527; *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 120, n. 5 (D. P.R. 1972); *Fleischer v. A.A.P., Inc.*, 180 F.Supp. 717 (D. Pa. 1958). An "impertinent" allegation is neither responsive nor relevant to the issues involved in the action and which could not be put in issue or given in evidence between the parties. *Gilbert*, 56 F.R.D. at 120, n. 6; *Burke v. Mesta Mach. Co.*, 5 F.R.D. 134 (D. Pa. 1946). An "impertinent" matter consists of statements that do not pertain and are unnecessary to the issues in question. *Fantasy, Inc.*, 984 F.2d at 1527.

Matters may be stricken to reduce trial complication or if challenged allegations are so unrelated to plaintiff's claims to be unworthy of consideration as a defense and their presence in the pleading will prejudice the party seeking to strike matters. *Fantasy, Inc.*, 984 F.2d at 1527. "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n. 34 (C.D. Cal. 1996). With these standards in mind, this Court turns to Team's attorney fees claims.

## **Attorney Fees**

Vulcan challenges the FAC's attorney fees claims in the absence of allegations of a prior "action" between Team and a third party and which resulted from the third party's wrongdoing. Vulcan assesses as lacking sufficient specificity FAC allegations that Team responded to the RWQCB. Vulcan points to California Code of Civil Procedure section 1021.6 ("section 1021.6"), the statutory basis for the FAC's (tenth) equitable indemnity cause of action and which provides:

> Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in the protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity or that the indemnitee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict.

Vulcan further argues that the FAC fails to satisfy section 1021.6(a) in the absence of allegations that Team was required to protect its interest by bringing an action against a third party or by defending

7

a third party's action. California Code of Civil Procedure section 22 defines "action" as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." An "action is an ordinary proceeding in a court of law." *Greenfield v. Superior Court*, 106 Cal.App.4th 743, 748, 131 Cal.Rptr.2d 179 (2003). As such, Vulcan argues that response to action or order of an administrative agency, such as RWQCB, is not an action contemplated by section 1021.6. Vulcan concludes that to seek attorney fees, the FAC needs to allege "a separate prior lawsuit between Plaintiff and a third party, and that the other lawsuit resulted from an alleged tort by Vulcan."

Team responds that section 1021.6 elements are "present" in that:

1.  Team has been required to bring this action against defendant property owners/leasees and to defend their counterclaims "because of the tortious conduct of Vulcan";
2.  Vulcan "has given no indication that it intends to defend Team"; and
3.  Team is entitled to attorney fees if: (a) the trier of fact determines Team is without fault "in its actions" against defendant property owners/leasees; or (b) final judgment is entered in Team's favor; and (c) the Court determines that Vulcan's tortious conduct caused Team to bring and defend actions against and of defendant property owners/leasees.

Team contends that counterclaims of defendant property owners/leasees against Team constitute a "principle" case which Team is required to defend. Team further argues that its claims against the defendant property owners/leasees also constitute a "principle" case which it "has been required to bring." Team concludes that if this Court determines that Team is "without fault" and that "such fault actually rests with Vulcan," Team may recover attorney fees to prosecute and defend the claims related to the defendant property owners/leasees.

"Section 1021.6 authorizes attorney fees to '*any* "innocent indemnitee" who has incurred attorney fees to defend itself and has otherwise satisfied the requirements of section 1021.6.'" *Wilson, McCall & Daoro v. American Qualified Plans, Inc.*, 70 Cal.App.4th 1030, 1036, 83 Cal.Rptr.2d 192 (1999) (quoting *John Hancock Mut. Life Ins. Co. v. Setser*, 42 Cal.App.4th 1524, 1533, 50 Cal.Rptr.2d 413 (1996)). "[S]ection 1021.6's reference to the 'principle case' does not necessarily mean the original

action filed by the plaintiff." *Wilson*, 70 Cal.App.4th at 1036, 83 Cal.Rptr.2d 192. "'[P]rincipal' refers to the action which caused the innocent indemnitee to defend itself and thereby incur attorney fees, as distinguished from the indemnitee's action for indemnity in which the section 1021.6 fees are sought." *Wilson*, 70 Cal.App.4th at 1036, 83 Cal.Rptr.2d 192.

Team fails to identify an adequate "principal" action to entitle it to recover attorney fees under section 1021.6. This action was brought by Team and triggered the counterclaims of the defendant property owners/leasees, and those counterclaims arose after Team filed its FAC. Team appears to attempt to transmute its claims and the counterclaims of the defendant property owners/leasees to a principal action for section 1021.6 indemnity. Team ignores that it bases its (tenth) equitable indemnity cause of action on the fact that "Team has been required to respond to the Regional Water Board based on contamination, and hereby demands defense and indemnity from Defendants." A response to the Regional Water Board does not equate to a principal action to trigger a section 1021.6 indemnity claim. The FAC fails to connect Team as an "innocent indemnitee" to incurrence of attorney fees to defend itself. As such, striking the attorney fees allegations and prayer is appropriate.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES without prejudice against all defendants the (twelfth) Porter-Cologne Statutory Contribution cause of action; and
2. STRIKES paragraphs 84 and 85 of the FAC's (tenth) equitable indemnity cause of action and the words "and statute" from the FAC's prayer, page 21, line 6.

IT IS SO ORDERED.

**Dated:   December 17, 2008**             /s/ Lawrence J. O'Neill
                                                          UNITED STATES DISTRICT JUDGE