1

2

3

4

5

6

7

8                        **IN THE UNITED STATES DISTRICT COURT**

9                      **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    TEAM ENTERPRISES, LLC,                       CASE NO. CV F 08-0872 LJO SMS

12                    Plaintiff,                    **ORDER ON MULTIMATIC'S MOTION FOR
                                                    JUDGMENT ON PLEADINGS**
13           vs.                                    (Doc. 288.)

14    WESTERN INVESTMENT REAL
      ESTATE TRUST, et al,
15
                     Defendants.
16    _____/

17
      AND RELATED ACTIONS.
18
      _____/
19

20                              **INTRODUCTION**

21           Defendant dry cleaning machine manufacturers Multimatic Corporation, Multimatic LLC, and

22    The Kirrberg Corporation (collectively "Multimatic")[1] seek F.R.Civ.P. 12(c) judgment on plaintiff Team

23    Enterprises, LLC ("Team's") hazardous substances clean up contribution claims on grounds that Team's

24    operative Third Amended Complaint ("TAC") lacks allegations to render Multimatic liable under federal

25    and state law, including the Comprehensive Environmental Response, Compensation and Liability Act

26    _____

27           [1]      Multimatic Corporation is now known as The Kirrberg Corporation, a New Jersey corporation.  Multimatic
      LLC is a New Jersey limited liability corporation and is the successor in interest to Multimatic Corporation and Multimatic
28    Dry Cleaning Machine Corporation.

                                              1

("CERCLA"), 42 U.S.C. §§ 9601, et seq., and the Hazardous Substance Account Act ("HSAA"), California Health & Safety Code, §§ 25300-25395.45.  Team responds that it "has sufficiently pled facts (or can plead additional facts) to constitute a plausible basis for liability."  This Court considered Multimatic's motion for judgment on pleadings on the record without a hearing.  For the reasons discussed below, this Court GRANTS Multimatic judgment on the pleadings on Team's claims against Multimatic.

## BACKGROUND[2]

### Summary

Team is a New Mexico limited liability company.  Since March 1980, Team has leased a portion of a Modesto shopping center ("property") where it has operated a One Hour Martinizing dry cleaner.  During March 1980 to 2004, perchloroethylene ("PCE"), a volatile organic compound used in dry cleaning and a hazardous substance, was used on the property.  In addition to Multimatic, Team pursues hazardous substance clean up and remediation claims against numerous defendants, including property owners.

### Allegations Against Multimatic

The TAC alleges that Multimatic:

1.  "[M]anufactured, distributed, designed, assembled, maintained, supervised, controlled, sold, operated and/or repaired equipment, parts, and appurtenances, including . . . dry cleaning equipment, in the State of California specifically designed for the storage, application, and disposal of PCE by TEAM that have contributed to the contamination";

2.  "[A]rranged for and exercised control over the disposal of PCE";

3.  "[D]isposed of and arranged for the disposal of PCE in such a way that contamination of soil and groundwater occurred";

4.  "[F]ailed to warn, and/or failed to adequately warn, TEAM as to the dangers related to the use and disposal of PCE and/or the use of its equipment";

5.  "[I]s legally responsible for and committed each of the tortious and wrongful acts alleged

---

[2]     The factual recitation derived generally from the TAC, the target of Multimatic's challenges.

1  herein"; and

2  6.  "[A]cted in capacity of co-conspirator, aider, abettor, joint venturer, partner, agent, alter

3  ego, principal, successor-in-interest, surviving corporation, fraudulent transferee,

4  fraudulent transferor, controller, alter ego, licensee, licensor, patent holder and/or

5  indemnitor of each of the remaining Defendants."

6  The TAC further alleges that the "Regional Water Quality Control Board, Central Valley Region

7  ('RWQCB'), the State of California agency that oversees groundwater contamination issues, has

8  indicated that the property requires clean up" and that Team "has incurred costs . . . due to contamination

9  at the Property." The TAC alleges against Multimatic claims under CERCLA and HASA and for

10  nuisance, trespass, equitable indemnity and declaratory relief, which will be discussed below. The TAC

11  seeks to recover Team's costs to respond to contamination at the property and a declaration that

12  Multimatic and the other defendants are jointly and severally liable for future costs.

13  **DISCUSSION**

14  **F.R.Civ.P. 12(c) Motion For Judgment On Pleadings Standards**

15  Multimatic contends that the TAC fails to support claims against Multimatic in that under the

16  alleged circumstances, dry cleaning equipment manufacturers are not "properly made parties."

17  Multimatic argues that the TAC "contains nothing more than conclusions with regard to Multimatic"

18  and that even if the TAC pled facts consistent with its conclusory statements, Team would not be entitled

19  to relief.

20  Team responds that the TAC survive's Multimatic's F.R.Civ.P. 12(c) motion based on its

21  allegations that Multimatic "designed and manufactured a dry cleaning machine – necessary to Team's

22  dry cleaning operation – that disposed of hazardous waste as part of its routine operation." Team offers

23  to amend the TAC to add allegations that Multimatic's instruction manual directed that "[w]aste water

24  must flow into an open drain" and addressed "foaming over or overboiling of [PCE]."

25  F.R.Civ.P. 12(c) permits a party to seek judgment on the pleadings "[a]fter the pleadings are

26  closed – but early enough not to delay trial." Multimatic notes that the pleadings have closed and that

27  trial has not been set to render its motion timely.

28  "A motion for judgment on the pleadings should be granted where it appears the moving party

3

1    is entitled to judgment as a matter of law." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir.

2    2003).  A "judgment on the pleadings is appropriate when, even if all allegations in the complaint are

3    true, the moving party is entitled to judgment as a matter of law." *Westlands Water Dist. v. Firebaugh*

4    *Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

5        "A judgment on the pleadings is a decision on the merits." *3550 Stevens Creek Associates v.*

6    *Barclays Bank of California*, 915 F.2d 1355, 1356 (9th Cir. 1990), *cert. denied*, 500 U.S. 917, 111 S.Ct.

7    2014 (1991). A F.R.Civ.P. 12(c) motion "is designed to dispose of cases where the material facts are not

8    in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and

9    any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.

10   1990) (per curiam). "[T]he central issue is whether, in light most favorable to the plaintiff, the complaint

11   states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

12       Courts dismiss complaints under F.R.Civ.P. 12(c) for either of two reasons: "(1) lack of a

13   cognizable legal theory, or (2) insufficient facts under a cognizable legal theory." *Gutierrez v. RWD*

14   *Technologies, Inc.*, 279 F.Supp.2d 1223, 1224 (E.D. Cal. 2003).

15       The standards for deciding F.R.Civ.P. 12(b)(6) and F.R.Civ.P. 12(c) motions are the same. *Great*

16   *Plains Trust v. Morgan Stanley Dean Witter*, 313 F.3d 305, 313, n. 8 (5th Cir. 2002). "Pleadings should

17   be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues

18   of fact and only questions of law remain." *Hughes*, 278 F.3d at 420.  A court "can choose to begin by

19   identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption

20   of truth. While legal conclusions can provide the framework of a complaint, they must be supported by

21   factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity

22   and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556

23   U.S. __, 129 S.Ct. 1937, 1950 (2009).

24       With these standards in mind, this Court turns to Multimatic's challenges to the TAC.

25                                   **CERCLA Arranger Liability**

26       The TAC's (first) CERCLA cost recovery claim under 42 U.S.C. § 9607(a)[3] alleges that

27   _____

28       [3]        Unless otherwise noted, all further statutory references with be to CERCLA, United States Code, Title 42.

4

defendants are "arrangers" of ""disposal and release of hazardous substances into the soil, groundwater and environment" and are liable for "necessary response costs" to address "the release of hazardous substances at or affecting the Property or surrounding properties." The TAC's (second) CERCLA contribution claim under section 9613(f)(1) alleges that "if TEAM is found to be liable under CERCLA," Multimatic and the other defendants "are liable to TEAM for their acts or omissions" to entitle Team to contribution.

CERCLA was enacted in 1980 to provide effective responses to health and environmental threats posed by hazardous waste sites. *United States v. Burlington Northern & Santa Fe Ry. Co.*, 502 F.3d 781, 792 (9th Cir. 2007), *reversed on other grounds*, __ U.S. __, 129 S.Ct. 1870 (2009). Under CERCLA, federal and state governments may initiate cleanup of toxic areas and sue potentially responsible parties for reimbursement. *Burlington Northern*, 502 F.3d at 792. A key CERCLA purpose is to shift "the cost of cleaning up environmental harm from the taxpayers to the parties who benefitted from the disposal of the wastes that caused the harm." *EPA v. Sequa Corp. (In the Matter of Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 897 (5th Cir. 1993). CERCLA is a "super-strict" liability statute. *Burlington Northern*, 502 F.3d at 792. "[L]iability is joint and several when the harm is indivisible." *Burlington Northern*, 502 F.3d at 793.

Section 9607(a) "allows private parties who incur cleanup costs to recover those costs from 'various types of persons who contributed to the dumping of hazardous waste at a site.'" *Carson Harbor v. County of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006) (quoting *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152 (9th Cir. 1989)). Section 9607(a)(3) identifies "arrangers" as "covered persons" subject to CERCLA contribution claims:

> . . . any person who by contract, agreement, or otherwise **arranged for disposal or treatment**, or **arranged** with a transporter **for transport for disposal or treatment**, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances . . . (Bold added.)

Section 9613(f)(1) authorizes contribution claims:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate

1  response costs among liable parties using such equitable factors as the court determines
2  are appropriate.

3      To plead a prima facie contribution case against Multimatic, Team must establish that Multimatic
4  is "within one of four classes of persons subject to CERCLA's liability provisions." *California Dept.*
5  *of Toxic Substances Control v. Payless Cleaners*, 368 F.Supp.2d 1069, 1076 (E.D. Cal. 2005).[4]
6  Although section 9607 creates the right of contribution, the "machinery" of section 9613 "governs and
7  regulates such actions, providing the details and explicit recognition that were missing" from section
8  9607. *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1302 (9th Cir. 1997), *cert. denied*,
9  524 U.S. 937, 118 S.Ct. 2340 (1998). As such, if an entity is not a covered person under section 9607,
10  that entity is not subject to section 9613 contribution liability because 9607 creates the section 9613
11  contribution right.

12                              ***Intentional Disposal***

13      Multimatic argues that to be an arranger, "a defendant must have taken intentional steps to
14  dispose of a hazardous substance." Team responds that Multimatic is a CERCLA arranger "because it
15  designed equipment to intentionally dispose of PCE into the environment."

16      Since CERCLA "does not specifically define what it means to 'arrang[e] for' disposal of
17  hazardous substance" the U.S. Supreme Court gives "the phrase its ordinary meaning." *Burlington*
18  *Northern and Sante Fe Railway Co. v. United States*, __ U.S. __, 129 S.Ct. 1870, 1879 (2009). "[U]nder
19  the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes
20  intentional steps to dispose of a hazardous substance." *Burlington Northern*, __ U.S. __, 129 S.Ct. 1870,
21  1879. In *Burlington Northern*, __ U.S. __, 129 S.Ct. 1870, the U.S. Supreme Court held that pesticide
22  manufacturer Shell Oil Company was not an arranger despite its knowledge of pesticide spills during
23  transfers and deliveries, and due to equipment failures. The U.S. Supreme Court explained:

24          While it is true that in some instances an entity's knowledge that its product will
          be leaked, spilled, dumped, or otherwise discarded may provide evidence of the entity's
25          intent to dispose of its hazardous wastes, **knowledge alone is insufficient to prove that
          an entity "planned for" the disposal**, particularly when the disposal occurs as a
26

27      [4]      In addition to arrangers, section 9607 identifies owners, operators and transporters as persons subject to
28  CERCLA liability. Multimatic identifies Team's theory to allege that "Multimatic falls within the 'arranger' category of
   potentially responsible parties under CERCLA."

1  peripheral result of the legitimate sale of an unused, useful product. In order to qualify
2  as an arranger, Shell must have entered into the sale of [its product] **with the intention**
   that at least a portion of the product be disposed of during the transfer process by one or
3  more of the methods described in § 6903(3).

4     . . . Shell's **mere knowledge** that spills and leaks continued to occur is
   insufficient grounds for concluding that Shell 'arranged for' the disposal of [a hazardous
5  substance] with the meaning of § 9607(a)(3).

6  *Burlington Northern*, __ U.S. __, 129 S.Ct. at 1880 (Bold added).

7        Multimatic challenges as conclusory and lacking requisite "intentionality" the TAC allegation

8  that Multimatic "disposed of and arranged for the disposal of PCE in such a way that contamination of

9  soil and groundwater occurred." Multimatic argues that as the "ostensible manufacturer of dry cleaning

10 equipment," it could not have "arranged for disposal or treatment of hazardous substances owned or

11 possessed by" Multimatic. Multimatic notes that after the subject dry cleaning equipment came into

12 Team's possession at the property, "Multimatic neither owned nor possessed it or its operations."

13 Multimatic notes that it could not have "disposed of anything" pursuant to CERCLA definition of

14 disposal. CERCLA borrows the Solid Waste Disposal Act's definition of "disposal" which "means the

15 discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste

16 into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may

17 enter the environment or be emitted into the air or discharged into any waters, including ground waters."

18 42 U.S.C. §§ 6903(3), 9601(29).

19       Team relies on TAC allegations that Multimatic manufactured dry cleaning equipment that was

20 "specifically designed for the storage, application, and disposal of PCE" and that Multimatic's disposal

21 resulted in contamination. Team equates such allegations to "planning and preparation for the disposal

22 of PCE, and are therefore intentional acts." Team argues that Multimatic's equipment "was a necessary

23 component to Team's business" to result in "discharge of water contaminated with a hazardous

24 substance." Team points to Multimatic's instruction manual directive that "[w]aste water must flow into

25 an open drain" to evidence "Multimatic's intentional control over the disposal process" in that "Team

26 had no practical alternative in using Multimatic's equipment."

27

28

7

1    Multimatic is correct that the sale of dry cleaning equipment does not equate to CERCLA

2    "disposal."  The TAC fails to allege that Multimatic controlled operation of the dry cleaning equipment

3    and in turn the disposal of hazardous substances.[5]  Team's reliance on an instruction manual directive

4    is insufficient given that knowledge of discard alone is insufficient "to prove that an entity 'planned for'

5    the disposal."  *Burlington Northern*, __ U.S. __, 129 S.Ct. 1879.  The TAC and Team's proposed

6    amendments fail to substantiate with facts that Multimatic knew how a dry cleaning equipment operator

7    would dispose of PCE to rise to the level of intentional disposal of a hazardous substance.  Intentional

8    disposal is negated by the absence of allegations that Multimatic installed or directed the installation of

9    dry cleaning equipment, connected dry cleaning equipment for disposal, directed on-site disposal from

10   dry cleaning equipment, or inspected dry cleaning equipment and its disposal.  Team fails to indicate

11   that it is prepared to make such allegations.  Moreover, Multimatic's dry cleaning equipment was not

12   a necessary component of Team's operations given that Team was free to use other manufacturers'

13   equipment.

14                                    ***Useful Product Defense***

15   Multimatic invokes the useful product defense to shield itself from CERCLA liability.

16   "A person may be held liable as an 'arranger' under § 9607(a)(3) only if the material in question

17   constitutes 'waste' rather that a 'useful product.'"  *Cal. Dept. of Toxic Substances v. Alco Pacific, Inc.*,

18   508 F.3d 930, 934 (9th Cir. 2007).  The useful product defense "applies when the sale is of a new

19   product, manufactured specifically for the purpose of sale, or of a product that remains useful for its

20   normal purpose in its existing state."  *California v. Summer Del Caribe, Inc.*, 821 F.Supp. 574, 581

21   (N.D. Cal. 1993).

22   "The vendor of a useful product which through its normal course produces a hazardous

23   substance, such as a battery, is not an arranger under CERCLA."  *Payless Cleaners*, 368 F.Supp.2d at

24   1077 (citing *Cadillac Fairview/Cal., Inc. v. United States*, 41 F.3d 562, 566 (9th Cir.1994)).  A

25   manufacturer of PCE cannot be held liable "as a CERCLA arranger where it has done nothing more than

26   sell a useful chemical."  *Payless Cleaners*, 368 F.Supp.2d at 1077.  "[T]he manufacturer of dry cleaning

27   ———————————

28       [5]    Team's reliance on the non-binding, non-analogous *U.S. v. Saporito*, 684 F.Supp.2d 1043 (N.D. Ill. 2010),
     is unavailing.

8

equipment who does nothing more than provide the machines and operating instructions is not an 'arranger' of waste disposal under CERCLA." *Adobe Lumber v. Hellman*, 415 F.Supp.2d 1070, 1081 (E.D. Cal. 2006), *vacated on other grounds sub nom. Kotrous v. Goss-Jewett Co.*, 523 F.3d 924, 934 (9ᵗʰ Cir. 2008).

Multimatic argues that CERCLA arranger liability cannot be imposed "[s]imply because Multimatic may have been connected to dry cleaning equipment at some point in time before it came to be in TEAM's possession." Multimatic continues that "[s]tanding alone, the dry cleaning equipment does not pose a threat to the environment."

According to Team, "[u]sually the useful product defense is invoked for goods and products (not equipment), whose physical composition includes a mixture of hazardous and non-hazardous substances." Team claims that such products "feature a lag time between sale and eventual discard, creating gaps between manufacture, use, and disposal. But with Multimatic's machine, the disposal process was envisioned during its design and manufacture." Team concludes that "Multimatic's machine does not qualify as a useful product because an inextricable part of its function was to create and dispose of a hazardous waste into the environment."

The useful product defense arises out of CERCLA's definition of "disposal" (Section 9601(29))[6] in that merely identifying a "hazardous substance" is insufficient to establish that its placement in a facility constitutes "disposal of any hazardous substance" under CERCLA. *See 3550 Stevens Creek*, 915 F.2d at 1360-1361. For CERCLA purposes, "disposal" is construed "as referring only to an affirmative act of discarding a substance as waste, and not to the productive use of the substance." *3550 Stevens Creek*, 915 F.2d at 1362.

In the CERCLA context, "hazardous substances are generally dealt with at the point when they are about to, or have become, wastes." *3550 Stevens Creek*, 915 F.2d at 1362. Congress did not intend CERCLA to target legitimate manufacturers or sellers of useful products but rather desired "to hold

---

[6]     As noted above, CERCLA borrows the Solid Waste Disposal Act's definition of "disposal" which "means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

liable those who would attempt to dispose of hazardous wastes or substances under various deceptive guises in order to escape liability for their disposal." *Dayton Independent School Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1065-1066 (5th Cir. 1990).

Acknowledging its "expansive view of arranger liability," the Ninth Circuit has "refused to hold manufacturers liable as arrangers for selling a useful product containing or generating hazardous substances that *later* were disposed of." *Burlington Northern*, 502 F.3d at 808 (italics in original). "Useful product" cases recognize that "liability cannot extend so far as to include *all* manufacturers of hazardous substances, on the theory that there will have to be disposal of the substance some time down the line, *after* it is used as intended." *Burlington Northern*, 502 F.3d at 808 (italics in original).

Team offers nothing meaningful to negate the useful product defense. The TAC offers broad, conclusory allegations that Multimatic "manufactured" and "designed" dry cleaning equipment and "arranged for and exercised control over the disposal of PCE" without supporting facts. Team's proposed additions offer no remedy. The TAC does not allege that the Multimatic's dry cleaning equipment itself is a hazardous substance and in turn, that its sale is an arrangement to dispose of hazardous substances. The transaction at issue is the sale of the dry cleaning equipment, an event which neither produces nor involves hazardous substances directly. The TAC fails to allege facts that the Multimatic's manufacture or sale of dry cleaning equipment constitutes "arrangement for the ultimate disposal of a hazardous substance." *Payless*, 368 F.Supp.2d at 1077.

Even looking beyond the actual sale, the TAC offers nothing to suggest that "disposal of a hazardous substance was arranged through the transaction." *Payless*, 368 F.Supp.2d at 1077. The analysis of a fellow judge of this Court rings true here: "Peters [parties seeking to impose CERCLA arranger liability] do not allege any facts to support a finding that a substantial part of Maytag's sale of the dry cleaning machines involved the arrangement for the disposal of waste water. Rather, Maytag's transaction can be described only as the sale of a useful good which, through its normal use, created a waste byproduct. Under these facts alone, Maytag may not be held liable as a CERCLA arranger." *Payless*, 368 F.Supp.2d at 1078. Moreover, Team places dubious reliance on *Berg v. Popham*, 113 P.3d 604, 611-612 (2005), quoted in *Bergman v. Popham*, 412 F.3d 1122 (9th Cir. 2005), in that the Alaskan Supreme Court addressed an impertinent Alaskan statute prior to the U.S. Supreme Court's *Burlington*

10

1   *Northern* decision.

2   The TAC and Team's proposed amendments fail to allege Multimatic's status as an arranger to

3   permit Team's CERCLA cost recovery and contribution claims which are subject to judgment on the

4   pleadings.

5   **HSAA**

6   The TAC's (third) claim seeks indemnification and contribution in that Multimatic and other

7   defendants "are liable persons under HSAA due to their status as . . . arrangers of the disposal and

8   discharge of hazardous substances on account of said Defendants' actual and direct control of the

9   method of disposal of PCE on the Property."

10   Multimatic is not subject to HSAA liability in the absence of derivative CERCLA liability in that

11   a "[r]esponsible party'" or "liable person" for HSAA purposes means "those persons described" in

12   CERCLA section 9607(a).  Cal. Heath & Saf. Code, § 25323.5(a)(1).  California Heath & Safety Code

13   section 25363(e), which permits indemnity and contribution claims for removal and remedial costs,

14   "parallels CERCLA."  *Western Properties Service Corp. v. Shell Oil Co.*, 358 F.3d 678, 682 (9th Cir.

15   2004).  The absence of a valid CERCLA claim dooms Team's HSAA claim.

16   **Continuing Private Nuisance**

17   The TAC's (sixth) continuing private nuisance claim alleges that "[d]efendants" caused or

18   permitted contamination to constitute a nuisance pursuant to California Civil Code section 3479.

19   Multimatic describes as "impossible" determination "exactly what TEAM's theory of liability

20   against Multimatic is."  Multimatic characterizes the claim to allege "that Multimatic failed to warn

21   TEAM as to the proper use of its equipment."

22   California Civil Code section 3479 addresses "acts constituting nuisance" and provides:

23   Anything which is injurious to health, including, but not limited to, the illegal
    sale of controlled substances, or is indecent or offensive to the senses, or is an obstruction
24   to the free use of property, so as to interfere with the comfortable enjoyment of life or
    property, or unlawfully obstructs the free passage or use, in the customary manner, of any
25   navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street,
    or highway, is a nuisance.
26

27   Citing to California Judicial Council Civil Jury Instructions ("CACI") No. 2021, Multimatic

28   argues that the TAC fails to address necessary private nuisance elements, in particular, Team's failure

11

to consent to Multimatic's conduct.  Multimatic continues that even if Team had consented to Multimatic's conduct, "such conduct would not be actionable as nuisance."  Multimatic points to *City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal.App.4th 28, 13 Cal.Rptr.3d 865 (2004), where the California Court of Appeal addressed a California hazardous substances remediation and recovery statute.  The California Court Appeal noted that in construing the statute "in light of the common law principles" on nuisance, "we conclude that those who took affirmative steps directed toward the improper discharge of solvent wastes – for instance, by manufacturing a system designed to dispose of wastes improperly or by instructing users of its products to dispose of wastes improperly – may be liable under that statute, but those who merely placed solvents in the stream of commerce without warning adequately of the dangers of improper disposal are not liable." *City of Modesto*, 119 Cal.App.4th at 43, 13 Cal.Rptr.3d 865.

Team responds that the nuisance standard is "whether the defendant created or assisted in the creation of the nuisance."  Team argues that "Multimatic's instruction to direct PCE-contaminated wastewater to an open drain constitutes an assist in the disposal of hazardous waste."  Team contends that TAC allegations that Multimatic failed to warn of dangers of PCE disposal negate Team's "consent to the contamination caused by Multimatic's equipment."

Team fails to challenge meaningfully Multimatic's points as to the absence of a private nuisance claim against it.  The claim rests on broad, conclusory allegations that Multimatic and other defendants caused or permitted contamination which constitutes a nuisance.  Team neither alleges nor offers facts to support such notions or the elements of a private nuisance claim as to Multimatic.  In addition, Team neither alleges nor offers facts that Multimatic obstructed or interfered with the free use or enjoyment of the property to doom the private nuisance claim.

**Public Nuisance**

The TAC's (seventh) public nuisance claim alleges that "contamination on and about the Property constitutes a public nuisance within the meaning of California Water Code Section 13050(m), and California Civil Code Sections 3479 and 3480."  The TAC's (eighth) public nuisance per se claim alleges that "defendants'" conduct constitutes a public nuisance and violates California Water Code sections 13050(m), 13304, 13350 and 13387, and California Health & Safety Code sections 5411,

1   5411.5 and 117555.

2       Multimatic argues that given the near identity of elements of public and private nuisance, the

3   public nuisance claim fails for the same reasons as the private nuisance claim.  Multimatic contends that

4   the public nuisance per se claim's reference to California Water Code and Health & Safety Code sections

5   seeks "to establish a standard of care by which Multimatic's conduct might be judged so as to establish

6   the culpability required under a nuisance theory" and that Team's failure to warn theory fails "as a matter

7   of law."

8       Team's opposition papers do not distinguish between private and public nuisance.  As such, this

9   Court construes Team's points addressed above to apply equally to its private and public nuisance

10  claims.

11      California Civil Code section 3480 defines public nuisance as "one which affects at the same

12  time an entire community or neighborhood, or any considerable number of persons, although the extent

13  of the annoyance or damage inflicted upon individuals may be unequal."

14      California Water Code section 13050(m) defines nuisance as "anything which meets all of the

15  following requirements:"

16      (1) Is injurious to health, or is indecent or offensive to the senses, or an obstruction to the
        free use of property, so as to interfere with the comfortable enjoyment of life or property.

17

18      (2) Affects at the same time an entire community or neighborhood, or any considerable
        number of persons, although the extent of the annoyance or damage inflicted upon
        individuals may be unequal.

19

20      (3) Occurs during, or as a result of, the treatment or disposal of wastes.

21      Similar to the private nuisance claim, Team fails to challenge meaningfully Multimatic's points

22  as to the absence of public nuisance and public nuisance per se claims against it.  The claim rests on

23  broad, conclusory allegations that Multimatic and other defendants engaged in conduct to result in

24  "contamination of soil and groundwater on and about the Property, and surrounding properties" to

25  constitute public nuisance.  Team neither alleges nor offers facts to support such notions or the elements

26  of a public nuisance claim as to Multimatic.  In addition, Team neither alleges nor offers facts that

27  Multimatic's conduct affected "an entire community or neighborhood" or obstructed or interfered with

28  the free use or enjoyment of the property to doom the public nuisance claims.

13

**Trespass**

The TAC's (ninth) continuing trespass claim alleges: "Defendants have trespassed and are trespassing on the Property by contaminating the soil and groundwater and/or by contributing to said contamination."

Multimatic faults the claim's failure to satisfy trespass elements.  Multimatic argues that "contamination, not the dry cleaning equipment itself . . . is the alleged trespasser" and that absent Multimatic's "affirmative action," TEAM lacks a viable trespass claim.

Team responds that Multimatic is subject to a trespass claim in that Multimatic designed its machine "to produce hazardous waste and Multimatic instructed that waste to be directed into the environment."

"California's definition of trespass is considerably narrower than its definition of nuisance." *Capogeannis v. Superior Court*, 12 Cal.App.4th 668, 674, 15 Cal.Rptr.2d 796 (1993).  "A trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it." *Wilson v. Interlake Steel Co.,* 32 Cal.3d 229, 233, 185 Cal.Rptr. 280 (1982) (citation omitted).  "The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another." *Cassinos v. Union Oil Co.,* 14 Cal.App.4th 1770, 1778, 18 Cal.Rptr.2d 574 (1993) (citation omitted) (trespass where wastewater was injected from defendant's property to plaintiff's, interfering with plaintiff's mineral estate).  A trespass "may include wrongful entry or invasion by pollutants." *Martin Marietta Corp. v. Insurance Co. of North America*, 40 Cal.App.4th 1113, 1132, 47 Cal.Rptr.2d 670 (1995).

However, when a "owner of property voluntarily places a product on the property and the product turns out to be hazardous, the owner cannot prosecute a trespass cause of action against the manufacturer of that product because the owner has consented to the entry of the product onto the land." *County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal.App.4th 292, 315, 40 Cal.Rptr.3d 313 (2006).

Multimatic is correct that the TAC fails to allege trespass elements as to Multimatic.  The TAC and Team's proposed amendments allege a sale of dry cleaning equipment which Team voluntarily placed on the property.  Neither the TAC nor Team's proposed amendments allege that Multimatic thrust its equipment onto the property without Team's consent.  Given that the Multimatic's equipment is not

14

1   a trespasser, the trespass claim fails.  Team raises no meaningful opposition to dismiss the trespass

2   claim.

3                                          **Equitable Indemnity**

4       The TAC's (tenth) equitable indemnity claim alleges that "Defendants are jointly liable" and

5   "obligated to defend, indemnify and hold harmless Team."

6       Multimatic characterizes the equitable indemnity claim as a "catchall" which fails with the

7   TAC's other claims.  Team responds that the claim survives with its viable CERCLA and HSAA claims.

8       California Civil Code section 1432 addresses contribution among joint obligors and provides that

9   "a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against

10  all, may require a proportionate contribution from all the parties joined with him."  Under California

11  Code of Civil Procedure section 875(c), "contribution may be enforced only after one tortfeasor has, by

12  payment, discharged the joint judgment or has paid more than his pro rata share thereof."

13      "California law permits a concurrent tortfeasor to obtain equitable indemnity *only* from another

14  concurrent tortfeasor."  *General Motors Corp. v. Doupnik*, 1 F.3d 862, 865 (9th Cir. 1993) (italics in

15  original).  "[T]here can be no indemnity without liability . . . [U]nless the prospective indemnitor and

16  indemnitee are jointly and severally liable to the plaintiff there is no basis of indemnity."  *Munoz v.*

17  *Davis*, 141 Cal.App.3d 420, 425, 190 Cal.Rptr. 400, 403 (1983).  "[A] right to indemnify exists only if

18  the injured party has a *legal cause of action* against both the indemnitor and the indemnitee."  *Doupnik*,

19  1 F.3d at 866 (italics in original).  The indemnity "doctrine presupposes that 'each of two persons is

20  made responsible by law to an injured party.'" *New Hampshire Ins. Co. v. Sauer*, 83 Cal.App.3d 454,

21  459, 147 Cal.Rptr. 879, 882 (1978) (citations omitted).

22      In the absence of predicate liability, the comparative equitable indemnity claim fails, especially

23  given failure to qualify Multimatic as a concurrent tortfeasor.

24                                          **Declaratory Relief**

25      The (eleventh) declaratory relief claim seeks "judicial determination of Team's rights,

26  indemnification and contribution" and that Team is not liable for all costs to clean up and remediate the

27  property.

28      Multimatic argues that the declaratory relief claim fails in the absence of an actual controversy

given that the remedy must "borrow from a separate source of substantive law." Team rests the claim's

viability on that of its CERCLA and HSAA claims.

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937). "A declaratory judgment is not a theory of recovery." *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994). The DJA "merely offers an *additional remedy* to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir. 1997). A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143-144 (9th Cir. 1994).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941). The United States Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

The declaratory relief claim falls with the demise of the CERCLA, HSAA and other claims and the absence of a cognizable justiciable controversy.

## **Attempt At Amendment Or Stay**

An attempt to amend the TAC is unwarranted given that Multimatic is entitled to judgment as a matter of law under the facts alleged in the TAC and even additional allegations proposed by Team.

16

1  Team offers no facts to avoid judgment for Multimatic.  In addition, this Court is not persuaded that a

2  stay is warranted pending the Ninth Circuit Court of Appeals' review of this Court's rulings on similar

3  issues in another action.

4                                          **Crossclaims**

5          Multimatic requests dismissal of three crossclaims by other defendants seeking contribution and

6  indemnity from Multimatic.  This Court is not prepared to provide such relief, which must be sought by

7  separate, properly noticed motions.  Nonetheless, in the absence of Multimatic's liability to Team, this

8  Court is unaware of any bases to maintain the crossclaims against Multimatic.  Multimatic and cross-

9  claimants would be well served to resolve the crossclaims without this Court's intervention given the

10  absence of ground to pursue crossclaims against Multimatic.

11                              **CONCLUSION AND ORDER**

12          For the reasons discussed above, this Court:

13      1.     GRANTS Multimatic judgment on the pleadings on Team's claims against Multimatic

14             and DISMISSES with prejudice Team's claims against Multimatic; and

15      2.     DIRECTS the clerk to enter judgment in favor of defendants Multimatic Corporation,

16             Multimatic LLC and The Kirrberg Corporation and against plaintiff Team Enterprises,

17             LLC in that there is no just reason to delay to enter such judgment given Team's claims

18             against these defendants and their alleged liability are clear and distinct from claims

19             against and liability of other defendants.  *See* F.R.Civ.P. 54(b).

20          IT IS SO ORDERED.

21  **Dated:**   __June 9, 2010__                    _____**/s/ Lawrence J. O'Neill**_____
                                                     UNITED STATES DISTRICT JUDGE
22

23

24

25

26

27

28